IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS NATIONAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 12 C 2300 |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

In June 2007, three construction workers were injured and one was killed when they fell from scaffolding while working on the exterior of a building in Indianapolis, Indiana. A tort lawsuit followed against the site manager, Messer Construction Co. ("Messer") and the lessor of the scaffolding equipment, Hi-Lo Climbers LLC ("Hi-Lo"). Both were insured under a policy issued by Travelers Property Casualty Company of America ("Travelers"), and also under a secondary umbrella insurance policy issued by Illinois National ("Illinois National"). Travelers defended Messer from the employees' tort claims but did not defend Hi-Lo. Illinois National ultimately stepped in to pay a portion of Hi-Lo's defense costs, and seeks in this action to recover the full amount of those expenses from Travelers. Illinois National has now moved for summary judgment on its claims. (Dkt. No. 31.) Illinois National's motion is granted in part and denied in part, as stated below.

BACKGROUND

On June 9, 2007, four construction workers were performing plaster work on the exterior of a new movie theater in Indianapolis, Indiana. (Dkt. No. 32 ("Pl.'s 56.1(a)(3) SMF") ¶¶ 14,

19.) The men were working on scaffolding, which was suspended by a wire rope. (*Id.* ¶ 19.) When that rope broke, one end of the scaffolding fell approximately thirty feet to the ground, injuring three of the men and killing a fourth. (*Id.* ¶¶ 19, 21.)

All of the men were employees of either Gibson-Lewis LLC or Gibson-Lewis of Indianapolis LLC (collectively, "Gibson-Lewis"). (*Id.* ¶ 19.) Gibson-Lewis, the prime contractor on the movie theater job, was insured for the accident under a policy issued by Travelers to cover the period from September 30, 2006, to September 30, 2007. (*Id.* ¶¶ 5, 6, 19.) The policy (the "Travelers Policy") has a per occurrence limit of $1 million. (*Id.* ¶ 5.) This coverage was supplemented by Illinois National, which issued an umbrella liability policy (the "Illinois National Policy") that covered Gibson-Lewis for the same period. (*Id.* ¶ 11.) The Illinois National Policy provided coverage only in excess of that provided under the Travelers Policy. (*Id.* ¶ 12.)

Gibson-Lewis hired Messer, a construction site manager, to perform plaster work on the exterior of the movie theater. (*Id.* ¶ 14.) Messer was also insured under the Travelers Policy. (*Id.* ¶ 36.) Gibson-Lewis also leased scaffolding equipment for this project from Hi-Lo, a company that provides scaffolding equipment for construction and maintenance sites. (*Id.* ¶ 15.) At the time of the accident, Burlington Insurance Company ("Burlington") was Hi-Lo's general liability carrier. (Dkt. No. 35 ("Def.'s 56.1(a)(3) SMF") ¶ 24.) (The court will refer to Burlington's insurance contract with Hi-Lo as the "Burlington Policy.")

Hi-Lo and Gibson-Lewis agreed to the terms of the scaffolding equipment rental in a May 31, 2007, lease agreement (the "Rental Agreement"). (Pl.'s 56.1(a)(3) SMF ¶ 16.) The Rental Agreement contains two relevant provisions. First, Gibson-Lewis agreed to defend and indemnify Hi-Lo against liabilities related to or arising out of the use of the equipment. (*Id.*

2

¶ 17.) Second, Gibson-Lewis agreed to designate Hi-Lo as an additional insured under its insurance policies. (*Id.* ¶ 18.)

Gibson-Lewis complied with the second provision by designating Hi-Lo as an additional insured under the "Contractors Xtend Endorsement" to the Travelers' Policy.[1] The Contractor's Xtend Endorsement provides blanket additional insured coverage for lessors of equipment designated by Gibson-Lewis in a written contract as additional insureds. (*Id.* ¶ 9.) Coverage under the Contractor's Xtend Endorsement is limited to injury "caused, in whole or in part, by [Gibson-Lewis's] acts or omissions in the maintenance, operation or use of equipment leased to you by such additional insured," and constitutes "excess over any valid and collectible 'other insurance' available to such additional insured." (*Id.*)

On June 9, 2007, the construction site accident at issue occurred, injuring three employees and killing a fourth. (*Id.* ¶ 19.) Within one day of the accident, Messer conducted an investigation, and found that the failure of two Gibson-Lewis employees to use independent fall protection equipment was a contributing factor in the accident. (*Id.* ¶¶ 24–26.)[2] On September 17, 2007, a final post-accident report by the Indiana Occupational Safety and Health Administration ("IOSHA") cited "lack of proper training for the operator of this hoist and other employees on the scaffold" and "lack of inspections" as contributing factors in the accident. (*Id.* ¶ 29–33.) The report concluded that Gibson-Lewis was responsible for "serious" violations of the U.S. Occupational Safety and Health Administration's Safety and Health Regulations for Construction. (*Id.* ¶ 35.) On September 24, 2007, IOSHA issued a safety order and penalty

---

[1] Throughout the rest of this opinion, the court's references to the Travelers Policy should be understood to include the Contractors Xtend Endorsement.

[2] Although the Messer report does not contain a date, a note repeated on two of the document's three pages states that "this report must be transmitted to the safety department within 24 hours of the accident/incident." (Dkt. No. 32, Ex. 4.) Travelers does dispute that the report was filed "immediately" after the accident. (*See* Dkt. No. 36 ¶ 24.)

against Gibson-Lewis. (*Id.* ¶ 34.) The safety order cited Gibson-Lewis's failure to properly train its employees and its failure to ensure that each employee working on a scaffold was protected by a fall arrest system. (*Id.*)

On June 27, 2007, the three injured employees[3] and the wife of the deceased employee brought suit against Messer and Hi-Lo in Indiana state court. (*Id.* ¶¶ 22, 23.) Messer sought coverage under the Travelers Policy, and on July 31, 2007, Travelers agreed to defend Messer in the lawsuit. (*Id.* ¶ 36; Def.'s 56.1(a)(3) SMF ¶ 9.)[4]

On July 10, 2007, Hi-Lo sent a letter to Gibson-Lewis seeking defense and indemnification for the employees' lawsuit in accordance with the Rental Agreement, and sent a copy of that letter directly to Travelers. (Pl.'s 56.1(a)(3) SMF ¶ 37; Def.'s 56.1(a)(3) SMF ¶¶ 3–6.) On July 16, 2007, Travelers acknowledged receipt of Hi-Lo's tender letter to Gibson-Lewis (Def.'s 56.1(a)(3) SMF ¶ 7.), but verbally denied coverage to Hi-Lo, in part based on "conflicting indemnity clauses" in the Rental Agreement. (Pl.'s 56.1(a)(3) SMF ¶ 38; *see also id.*, Ex. 10–12.) The parties do not agree on the exact grounds of the denial.

On September 17, 2007, Hi-Lo filed a third-party complaint against Gibson-Lewis seeking enforcement of the provisions in the Rental Agreement providing that Gibson-Lewis would defend and indemnify Hi-Lo. (Pl.'s 56.1(a)(3) SMF ¶ 39.) Travelers agreed to defend Gibson-Lewis in the third-party suit, but continued to refuse coverage for Hi-Lo in the underlying litigation. (*Id.*)

On June 15, 2010, Travelers settled the claims by the employees against Messer in the underlying suit, paying out the entire $1 million per occurrence policy limit on the Travelers

---

[3] One of these three employees did not join the action until May 19, 2009.

[4] Note that under the Travelers Policy, defense costs do not count toward the limits of the insurance. (Pl.'s 56.1(a)(3) SMF ¶ 8.)

Policy. (*Id.* ¶ 40.) Upon exhaustion of the Travelers Policy, Illinois National assumed the defense of Gibson-Lewis in Hi-Lo's third-party lawsuit pursuant to the Illinois National Policy. (*Id.* ¶ 41.)

On September 9, 2010, Burlington, which had defended Hi-Lo in the underlying suit by the employees against Hi-Lo as Hi-Lo's general liability carrier, sought reimbursement from Travelers for expenses incurred in Hi-Lo's defense from July 10, 2007, the date it sought coverage from Gibson-Lewis, through June 15, 2010, the date the Travelers Policy was exhausted. (Pl.'s 56.1(a)(3) SMF ¶ 43; Def.'s 56.1(a)(3) SMF ¶ 26.) Burlington sought $275,242.63 in defense expenses. (Pl.'s 56.1(a)(3) SMF ¶ 43.) On October 22, 2010, Travelers, by letter, refused to reimburse Burlington, mentioning for the first time the excess coverage provision in the Contractors Xtend Endorsement as a reason for its refusal to defend Hi-Lo. (Def.'s 56.1(a)(3) SMF ¶ 27; Dkt. No. 34 ("Def.'s Resp.") at 8; Dkt. No. 35, Ex. O ("In addition, this coverage is <u>excess</u> unless agreed in writing to be primary or non-contributory.").) According to Travelers, the Travelers Policy thus would not cover Hi-Lo unless Hi-Lo's policy with Burlington was first exhausted.

Subsequently, on November 1, 2010, Burlington sought reimbursement from Illinois National, as Gibson-Lewis's excess insurance provider, for its expenses in defending Hi-Lo in the underlying litigation. (Def.'s 56.1(a)(3) SMF ¶ 28.) On December 15, 2010, Illinois National sought to compel Travelers to cover Burlington's pre-exhaustion defense costs incurred while defending Hi-Lo in the underlying litigation, and Travelers again refused. (Pl.'s 56.1(a)(3) SMF ¶¶ 45, 46.)

On March 14, 2012, Illinois National settled Hi-Lo's claims against Gibson-Lewis for its defense costs for $250,000. In return, Illinois National acquired from Hi-Lo and Burlington the right to sue Travelers to enforce Travelers' alleged obligation to defend Hi-Lo. (*Id.* ¶ 47.)[5]

## LEGAL STANDARD

A movant is entitled to summary judgment if the movant can show that "there are no genuine issues of material fact and judgment as a matter of law is warranted for the moving party." *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 888 (7th Cir. 2011) (citing Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986)). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson*, 477 U.S. at 248. All of the evidence is viewed in the light most favorable to the non-movant, and the court must draw all reasonable inferences in favor of the non-movant. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

"The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *W. Suburban Bank of Darien v. Badger Mut. Ins. Co.*, 141 F.3d 720, 723-24 (7th Cir. 1998) (citation and quotation marks omitted).

## DISCUSSION

Illinois National seeks summary judgment on the ground that Travelers breached its duty to defend Hi-Lo, and is therefore estopped from relying on the excess coverage provision in its policy. (Dkt. No. 31, at 1.) Before addressing the estoppel issue, however, the court must determine which state's law applies to interpret the Travelers' policy.

---

[5] Travelers asserts that the settlement was actually a "settlement of Illinois National and Gibson-Lewis' potential indemnity exposure with respect to the Hi-Lo Third Party Lawsuit." (Dkt. No. 36 ¶ 47.)

6

I.   Choice of Law

A federal court exercising diversity jurisdiction must look to the substantive law of the state in which the district court sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). This is true in the choice of law context as well, where a district court looks "to the choice-of-law rules of the state in which it sits to determine which state's substantive law should apply." *Valentine v. Founders Ins. Co.*, No. 08 C 3302, 2010 WL 3713687, at *4 (N.D. Ill. Sept. 13, 2010) (Zagel, J.). Under *Erie*, a federal court resolves a dispute "about state law the way the state's highest court would resolve it." *LaPlant v. N.W. Mut. Life Ins. Co.*, 701 F.3d 1137, 1141 (7th Cir. 2012).

Under Illinois law, the court must make a choice-of-law determination only when the application of a different state's law would make a difference in the outcome. *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007); *see also Barron v. Ford Motor Co. of Can. Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992) ("[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states."). Here, the parties agree that, assuming Travelers breached its duty to defend Hi-Lo, Illinois law would estop Travelers from asserting the applicability of the excess clause. (*See* Def.'s Resp. at 4 ("Illinois follows the minority rule wherein an insurer is estopped from asserting coverage defenses if it wrongfully refused to defend.").) But the parties disagree about the applicability of estoppel under Michigan law. The court therefore must analyze the application of Michigan's estoppel law to this case to determine if it leads to a different outcome than Illinois law.

A.   Michigan Estoppel Law

Under Michigan law, the general rule is that "once an insurance company has denied coverage to an insured and stated its defenses, the insurance company has waived or is estopped

7

from raising new defenses." *Kirschner v. Process Design Assocs., Inc.*, 592 N.W.2d 707, 709 (Mich. 1999); *see also Mich. Twp. Participating Plan v. Fed. Ins. Co.*, 592 N.W.2d 760, 767 (Mich. Ct. App. 1999); *Smit v. State Farm Mut. Auto. Ins. Co.*, 525 N.W.2d 528, 530 (Mich. Ct. App. 1994). However, "the application of waiver and estoppel is limited and, usually, the doctrines will not be applied to broaden the coverage of a policy to protect the insured against risks that were not included in the policy or that were expressly excluded from the policy." *Kirschner*, 592 N.W.2d at 709-10. This rule stems from the Michigan Supreme Court's holding in *Ruddock v. Detroit Life Ins. Co.*, 177 N.W. 242, 248 (Mich. 1920). The *Ruddock* court justified the rule as follows:

> To apply the doctrine of estoppel and waiver here would make this contract of insurance cover a loss it never covered by its terms, to create a liability not created by the contract and never assumed by the defendant under the terms of the policy. In other words, by invoking the doctrine of estoppel and waiver it is sought to bring into existence a contract not made by the parties, to create a liability contrary to the express provisions of the contract the parties did make.

*Id.* To put it another way, "an insurance company should not be required to pay for a loss for which it has charged no premium." *Kirschner*, 592 N.W.2d at 710.

Michigan courts have recognized two classes of cases that form exceptions to the *Ruddock* rule. *Lee v. Evergreen Regency Coop. & Mgmt. Sys., Inc.*, 390 N.W.2d 183, 186 (Mich. Ct. App. 1986). One exception involves cases in which "the inequity of forcing the insurer to pay on a risk for which it never collected premiums is outweighed by the inequity suffered by the insured because of the insurance company's actions." *Smit*, 525 N.W.2d at 531 (citation omitted). That exception generally applies only when the insurance company has "misrepresented the terms of the policy to the insured," or "defended the insured without reserving the right to deny coverage." *Lee*, 390 N.W.2d at 287. Accordingly, that exception is

plainly not applicable here. Illinois National has not argued that Travelers misrepresented the policy terms to Hi-Lo, nor did Travelers defend Hi-Lo without a reservation of rights.

The next exception "involves companies which have rejected claims of coverage and declined to defend their insureds in the underlying litigation. In these instances, the [Michigan Supreme] Court has held that the insurance company cannot later raise issues that were or should have been raised in the underlying litigation." *Smit*, 525 N.W.2d at 531 (citations omitted). "These cases are closely akin to the principle behind collateral estoppel." *Id.* (citation omitted).

In *Morrill v Gallagher*, the Michigan Supreme Court described this exception as follows:

> As a general rule and in the absence of fraud and collusion, if a liability insurer who has a right to defend actions against the insured has timely notice of such an action and defends or elects not to defend, the judgment in such case is binding upon the insurer, as to issues which were or might have been litigated therein, when the insurer is later sued by the injured person. In several cases, it has been held or stated that where an insurer conducts the defense of an action for personal injuries against the insured, it becomes bound by the judgment as to all matters at issue in such action even though it is not a formal party, so that it cannot subsequently deny that the claim was covered by its policy where the issue was settled adversely to it in the action for damages.

122 N.W.2d 687, 691 (Mich. 1963) (quotation marks and citation omitted). In *Morrill*, for example, an insurance company failed to defend its insured in tort litigation. After winning a judgment, the plaintiff sought to collect from the insurance company, claiming that the policy covered the claim. *Id.* at 689. In its defense, the insurer attempted to raise for the first time issues that would have defeated the underlying judgment against the insured. *Id.* at 691. The Morrill court held that the insurance company was estopped from "challeng[ing] the validity of the judgment entered in the original action instituted by plaintiff," because it should have raised issues challenging that judgment in the underlying litigation. *Id.*

The *Morrill* exception is inapplicable here because it applies only in the situation in which an insurer is later sued by the injured person in an attempt to collect a prior judgment of

9

liability against the insured from the insurer. In that case, the injured party has already litigated the question of liability to a final judgment, and principles of repose and finality require that the insured not have the opportunity to litigate those issues again merely because it wrongfully refused to participate in the underlying action by defending the insured. *See Lee*, 390 N.W.2d at 287 (explaining the exception's connection to the doctrine of collateral estoppel).

Here, by contrast, the four Gibson-Lewis employees (the plaintiffs in the underlying suit) are not suing Travelers to collect a judgment against Hi-Lo. Instead, Illinois National is suing Travelers in the shoes of Hi-Lo in an attempt to collect the cost of defending Hi-Lo. In other words, the insured, rather than the injured party, is attempting to assert estoppel against the insurance company. Moreover, the insured has no interest in finality or repose, because the disputed question in the present suit (Travelers' duty to defend Hi-Lo in light of the excess coverage provision) has not been fully litigated to a final judgment in any previous action. Indeed, the excess coverage provision was never at issue in the underlying action between the injured parties and Hi-Lo, or in the third-party complaint filed by Hi-Lo against Gibson-Lewis.

Far from being potentially dispositive, Travelers' assertion of the excess coverage provision was irrelevant to both the underlying action and the third-party complaint, as it could not have defeated a judgment against either Hi-Lo or Gibson-Lewis. The underlying complaint was a tort action that put Hi-Lo and Messer's negligence at issue. (*See* Dkt. No. 32, Ex. 1, Tab E.) The third-party complaint addressed Gibson-Lewis's duty to defend and indemnify Hi-Lo under the Rental Agreement. (*See* Dkt. No. 32, Ex. 1, Tab G ("Wherefore the Defendant/Third Party Plaintiff, Hi-Lo Climbers, L.L.C. requests that this court find Gibson-Lewis responsible for defending and indemnifying Hi-Lo against Plaintiffs' claims herein . . . .").) Neither action

implicated Travelers' obligation to cover Hi-Lo under the Travelers Policy.[6] Accordingly, there is no reason that Travelers should have raised the excess coverage provision in either the underlying action or the third-party complaint.

The court therefore finds that the *Ruddock* exception for issues that "were or should have been raised in the underlying litigation" is inapplicable. *Smit*, 525 N.W.2d at 531. Under Michigan law, Travelers would be allowed to assert the excess coverage provision to challenge the existence of its duty to defend Hi-Lo. Under Illinois law, by contrast, Travelers would be estopped from asserting the excess coverage provision. The court therefore must apply Illinois conflict of law rules to decide which law governs in this case.

B.  Conflict of Laws Determination

The Travelers Policy lacks a choice of law provision. In that situation, the Illinois Supreme Court has stated that an insurance policy is generally

> governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract.

*Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 655 N.E.2d 842, 845 (Ill. 1995). These factors are not to be weighed equally; case-by-case analysis might inflate or diminish the importance of each one. *Emerson Electric Co. v. Aetna Cas. & Sur. Co.*, 743 N.E.2d 629, 640 (Ill. App. Ct. 2001).

---

[6] As Illinois National points out, the third-party complaint alleges that Travelers, at the time the third-party complaint was filed, had not accepted the defense and indemnification of Hi-Lo. (*See* Dkt. No. 32, Ex. 1, Tab G.) The court disagrees with Illinois National that this language "put Travelers' duty to defend [Hi-Lo] at issue." (Pl.'s Reply at 4.) Travelers is not listed as a defendant in the complaint, which specifically asks for relief only against Gibson-Lewis. The Travelers Policy, and specifically the excess provision, were irrelevant to adjudication of the third-party complaint.

11

In this case, as Illinois National admits, the Travelers Policy was issued in Michigan to a named insured based in Michigan. (*See* Pl.'s Reply at 3; *see also* Dkt. No. 33, at 7.) Moreover, the insurance policy was delivered to Michigan, and the insurance agent who arranged the sale of the policy was based in Michigan. (*See* Dkt. No. 35, Ex. A.) Illinois National nonetheless contends that Illinois law should apply because Hi-Lo is an Illinois business and the Rental Agreement between Gibson-Lewis and Hi-Lo contains a choice of law provision directing that Illinois law apply.

The choice of law provision in the Rental Agreement is not germane to the conflict of law question here. That provision would govern litigation between Gibson-Lewis and Hi-Lo about the Rental Agreement, but this case is a dispute over the Travelers Policy. The Rental Agreement's choice of law provision is thus irrelevant. Hi-Lo's status as an Illinois LLC is relevant, but it has limited probative value, because Hi-Lo was insured under the Travelers Policy merely as an additional insured in relation to a single construction project. The insurance policy as a whole has many more connections to Michigan than to Illinois. Weighing Hi-Lo's status as an Illinois LLC against the multiple Michigan contacts, the court finds that Michigan law applies in this case.

Because Michigan law applies, Travelers is not estopped from asserting the applicability of the excess coverage provision. The court thus turns to applying the excess coverage provision.

II.  Application of the Excess Coverage Provision

Even if Travelers is not estopped from asserting the excess coverage provision, Illinois National contends for the first time in its reply that the indemnity provisions of the Rental Agreement require Travelers to cover Hi-Lo "'notwithstanding the existence of [the excess coverage provision].'" (Pl.'s Reply at 5 (quoting *Am. Indem. Lloyds v. Travelers Property &*

*Cas. Ins. Co.*, 335 F.3d 429, 436 (5th Cir. 2003)).) Arguments raised for this first time in reply are waived. *See Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005) ("[Defendant] did not develop this argument in his initial brief before this court, raising it in a meaningful way only in his reply brief, so it is waived.") Accordingly, Illinois National's argument is waived.

The excess coverage provision in the Contractors Xtend Endorsement thus applies. The Contractors Xtend Endorsement provides that the "insurance afforded to the additional insured is excess over any valid and collectible 'other insurance' available to such additional insured." (Dkt. No. 35, Ex. A, at 51.) "Other insurance" is defined by the Contractors Xtend Endorsement as "insurance, or the funding of losses, that is provided by, through or on behalf of . . . another insurance company." (*Id.* at 49-50.) Travelers contends that Hi-Lo's primary insurance came through the Burlington Policy, and that the excess coverage provision thus means that it had no duty to defend Hi-Lo.

There is no dispute that Burlington—another insurance company—was Hi-Lo's general liability carrier. As Illinois National points out, however, the Burlington Policy contains a similar excess coverage provision. That provision states: "This insurance is excess over . . . [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement." (*See* Dkt. No. 35, Ex. L, at 28.)

Both the Burlington Policy and the Travelers Policy would be primary but for the presence of the other policy. There is therefore a conflict between the two policies, because both policies, "if given literal effect, would lay the responsibility to defend and indemnify [Hi-Lo] on the other company . . . . [T]his would, ironically, leave [Hi-Lo], an 'insured' under both policies,

without a defense or indemnification." *Pioneer State Mut. Ins. Co. v. TIG Ins. Co.*, 581 N.W.2d 802, 806 (Mich. Ct. App. 1998).

Travelers attempts to distinguish the excess provisions by arguing that Burlington's excess provision is triggered only when Hi-Lo has other *primary* insurance but, because of the presence of the Burlington Policy, Travelers' coverage of Hi-Lo is only excess, not primary. Travelers raises this argument only in an unsupported footnote (Dkt. No. 34, at 11 n.7), and it is thus waived. *See Schrock v. Learning Curve Int'l, Inc.*, 744 F. Supp. 2d 768, 770 (N.D. Ill. 2010) (Kocoras, J.) ("Undeveloped arguments and arguments raised in footnotes are waived." (citing *Goren v. New Vision Int'l*, 156 F.3d 721, 726 n.2 (7th Cir. 1998); *United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989))).

Even if the argument were not waived, it fails because Burlington (or Illinois National, standing in Burlington's shoes) could make the same argument, leaving Hi-Lo with no coverage at all. That result is foreclosed by *Pioneer*, which addressed a conflict between two excess clauses substantially similar to those at issue here. The court held that Travelers' argument, if it were accepted, would lead to a circularity problem, because "the decision as to which clause is primary depends on which policy is read first." *Pioneer*, 581 N.W.2d at 805 (citing *Fed. Kemper Ins. Co. v. Health Ins. Admin., Inc.*, 383 N.W.2d 590, 592 (Mich. 1986)). To avoid that circularity problem, the court held that when two excess provisions conflict, "liability is to be apportioned on the basis of the policy limits." *Pioneer*, 581 N.W.2d at 807.

In this case, the policy limits per occurrence under both the Travelers Policy and the Burlington Policy are $1 million. (*See* Dkt. No. 35, Ex. L, at 16; Pl.'s 56.1(a)(3) SMF ¶ 5.) Burlington and Travelers therefore both had a duty to defend Hi-Lo and to split the costs of that

14

defense equally. Accordingly, Travelers and Illinois National should split the $250,000 in defense costs that Illinois National is seeking evenly at $125,000 apiece.

III. Assignment

Travelers' final argument against that result is that Illinois National is not entitled to recover any of its payment to Burlington for Hi-Lo's defense costs from Travelers. In response, Illinois National asserts that it is entitled to recover its payment to Burlington because Burlington and Hi-Lo assigned their claims against Travelers to Illinois National, and that it is thus suing in their shoes.[7] Specifically, Illinois National paid $250,000 to settle Hi-Lo and Burlington's claims against it. In exchange, Hi-Lo and Burlington assigned to Illinois National "all claims, causes of action, rights, and/or defenses that Hi-Lo and Burlington have against Travelers in connection with, relating to, or arising out of the underlying lawsuit and/or Hi-Lo's Third-Party Lawsuit." (Pl.'s 56.1(a)(3) SMF ¶ 49.)

Travelers argues that Illinois National, as an assignee, can have rights no greater than those enjoyed by Burlington or Hi-Lo. Travelers then contends that Burlington could not recover from Travelers because of the excess coverage provision. The court has already rejected that argument, holding that Burlington had the right to pursue Travelers for half of Hi-Lo's defense expenses incurred before the Travelers Policy was exhausted. Because Burlington could have brought that suit against Travelers, it could also assign that cause of action to Illinois National, regardless of whether Hi-Lo could make that assignment.

Travelers further contends that Illinois National's $250,000 payment merely fulfilled its own obligation to defend Hi-Lo because of its own obligations to Gibson-Lewis as a secondary

---

[7] Illinois National also asserts that it has a right to sue under the doctrine of equitable subrogation. In light of the court's holding that the assignment from Hi-Lo and Burlington gives Illinois National the right to sue Travelers, the court need not address the equitable subrogation theory.

15

insurer. Even assuming that contention is true, however, it does not affect the validity of the settlement agreement's assignment to Illinois National of Hi-Lo's and Burlington's claims against Travelers. Travelers' argument fails.

## CONCLUSION

For the reasons explained above, the summary judgment motion of plaintiff Illinois National (Dkt. No. 31) is granted in part and denied in part, as stated above. Because Travelers and Illinois National should split the $250,000 defense costs equally, the court hereby enters judgment in favor of Illinois National against Travelers in the amount of $125,000. Payment should be made forthwith. Civil Case Terminated.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: March 22, 2013